UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Sharee R.,

                Plaintiff,

    v.

Nancy A. Berryhill, Acting Commissioner of Social Security Operations,

                Defendant.

CASE NO. 3:17-cv-06055-DWC

ORDER

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she concluded Plaintiff's neurocognitive disorder did not constitute a medically determinable severe impairment at Step Two. In making this determination, the ALJ improperly evaluated the opinion of examining psychologist, Loreli Thompson, Ph.D.

Had the ALJ properly considered Dr. Thompson's opinion and Plaintiff's neurocognitive disorder at Step Two, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

In 2014, Plaintiff filed an applications for DIB and SSI, alleging disability as of July 7, 2013.[1] *See* Dkt. 8, Administrative Record ("AR") 84. The application was denied upon initial administrative review and on reconsideration. *See* AR 139-202. A hearing was held before ALJ Marilyn Mauer on March 11, 2016. *See* AR 104-129. In a decision dated April 28, 2016, the ALJ determined Plaintiff to be not disabled. *See* AR 81-103. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to properly evaluate Plaintiff's medical determinable impairments at Step Two and the medical evidence; (2) failing to properly evaluate Plaintiff's subjective symptom testimony; and (3) failing to properly assess Plaintiff's residual functional capacity ("RFC") and the findings at Steps Four and Five. Dkt. 12 at 1. Plaintiff seeks remand for an award of benefits, or in the alternative, remand for further administrative proceedings. Dkt. 12 at 17-18. The parties also dispute the alleged disability onset date of July 7, 2013. Dkt. 12 at 1 at fn.1; Dkt. 13 at 7-8.

---

[1] Plaintiff acknowledges the alleged onset date of July 7, 2013 stated in the ALJ's decision is incorrect because Plaintiff's earnings record show that her earnings did not drop below substantial gainful activity ("SGA") levels until January 2014. Dkt. 12 at 1 at fn.1 (citing AR 297). Defendant argues it was proper for counsel to make this concession, but Plaintiff may actually have been working at SGA levels beyond that time. Dkt. 13 at 7-8. This issue will be addressed in Section II, *infra*.

| | |
|---|---|
| 1 | STANDARD OF REVIEW |
| 2 | Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of |
| 3 | social security benefits if the ALJ's findings are based on legal error or not supported by |
| 4 | substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th |
| 5 | Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). |
| 6 | DISCUSSION |

**I. Whether the ALJ erred by failing to properly evaluate Plaintiff's medical determinable impairments at Step Two and the medical opinion evidence from examining psychologist, Dr. Thompson.**

Plaintiff argues the ALJ erred by incorrectly asserting Dr. Thompson did not diagnose Plaintiff with a neurocognitive disorder, failing to find Plaintiff's neurocognitive disorder was a severe impairment, and by failing to include in the RFC assessment all of Plaintiff's limitations related to her neurocognitive disorder. Dkt. 12 at 2-4.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Regarding mental impairments, the ALJ will consider four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[2] If the ALJ rates the degree of a claimant's

---

[2] On March 27, 2017, the four areas of functioning changed to: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The Court, however, applies the regulations which were in effect on the date of the ALJ decision. *See Rose v. Berryhill*, 2017 WL 2562103, at *2 (C.D. Cal. June 13, 2017) ("the reviewing court generally applies the law in effect at the time of the ALJ's decision").

ORDER - 3

limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*. at (d)(1). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

At Step Two, the ALJ found Plaintiff has the following severe impairments: fibromyalgia; rheumatoid arthritis; osteoarthritis (hands); degenerative joint disease (knees); morbid obesity; Meniere's disease; obstructive sleep apnea; post-traumatic stress disorder ("PTSD"); and major depressive disorder, moderate. AR 87. With respect to a neurocognitive disorder, the ALJ found "[t]he ruling out of a neuro-cognitive disorder was confirmed in a consultative examination in November 2014, by Lorelei A. Thompson, Ph.D." AR 88. The ALJ reviewed Plaintiff's test results and stated, "Dr. Thompson did not conclude the results were indicative of a neuro-cognitive disorder. For these reasons, I find that this impairment is not medically determinable." AR 88. Later in the decision, in her discussion of the opinion evidence, the ALJ assigned great weight to Dr. Thompson's opinion, noting Dr. Thompson's tests were thorough and detailed and her findings were consistent with the record. AR. 94.

However, the ALJ mischaracterized Dr. Thompson's findings. In November 2014, Dr. Thompson diagnosed Plaintiff with PTSD; major depressive disorder, moderate; and

neurocognitive disorder, traumatic brain injury ("TBI"),[3] provisional. AR 555-56. Dr. Thompson found Plaintiff's memory functions were all below average with three areas in the extremely low range. AR 556. Dr. Thompson found Plaintiff had poor concentration and was in the 40th percentile of the Trails A test and her Trails B scores were below the 10th percentile.[4] AR 556. Dr. Thompson noted Plaintiff reported a poor academic history which included Plaintiff being held back a grade and receiving special help for math, reading, and spelling. AR 556. Based on the foregoing, Dr. Thompson stated, "[Plaintiff] is diagnosed with Neurocognitive Disorder at this time." AR 556. Dr. Thompson noted a review of school records of testing/performance and conducting additional cognitive testing may be helpful in determining whether Plaintiff has a learning disability rather than neurocognitive disorder. AR 556. Dr. Thompson found Plaintiff responded to questions in an open and honest manner, and there did not appear to be any evidence of Plaintiff exaggerating symptoms or any inconsistencies throughout the evaluation. AR 555.

Here, the record reflects Dr. Thompson did not *rule out* a neurocognitive disorder diagnosis, but more accurately, found Plaintiff's neurocognitive disorder diagnosis was *provisional*, indicating additional testing may be needed to confirm the diagnosis. AR. 555-56. The Court is not aware of, and the parties do not cite any Ninth Circuit case law on whether a provisional diagnosis qualifies as a medically determinable impairment.[5] Nevertheless, several

---

[3] Dr. Thompson noted Plaintiff was involved in a car accident at age 39 which resulted in a major head injury. AR 551, 555.

[4] Trails A and B tests are neuropsychological tests of visual attention and task switching. *See Clover v. Berryhill,* 2018 WL 783809, at *2 (N.D. Cal. Feb. 7, 2018).

[5] The Court notes district courts in the Ninth Circuit have listed provisional diagnoses among a plaintiff's medically determinable impairments. *See Schmidt v. Berryhill,* 2017 WL 2672072, at *4 (D. Or. June 20, 2017) (collecting cases); *see e.g.*, *Mangum v. Colvin*, 2013 WL 5496830, at *2 (E.D. Wash. Oct. 3, 2013) (the ALJ found the plaintiff's provisional cognitive disorder was a severe impairment); *Glass v. Astrue*, 2013 WL 4496500, at *4 (D. Or. July 29, 2013) (ALJ found the "provisional diagnosis of a personality disorder" as a "medically determinable mental impairment"), *adopted as modified sub nom. Glass v. Colvin*, 2013 WL 4478694 (D. Or. Aug. 20, 2013);

district courts have clarified the distinction between a provisional diagnosis and a rule out diagnosis. In a recent district court case from the Eastern District of Washington, the court explained the nuances in such diagnoses, noting a provisional diagnosis has a much higher degree of certainty than a rule out diagnosis:

> By using the term "provisional," Dr. Cline meant that he did not have enough information to make a firm diagnosis of schizoaffective disorder, but presumed that the full criteria for that disorder would ultimately be met. Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (2013) ("DSM-V") at p. 23. A "provisional" diagnosis, therefore, constitutes much more than mere equivocation or speculation. It also has a degree of certainty, unlike the "rule out" diagnoses suggested by Dr. Burdge. Those "rule out" diagnoses are inherently uncertain. Indeed, because of their uncertainty, they are not really diagnoses at all.[6]

*Blair v. Berryhill*, 2017 WL 3710843, at *5 (E.D. Wash. July 31, 2017). *See also Perkins v. Colvin*, 2014 WL 4851344, at *4 at fn. 2 (E.D. Wash. Sept. 29, 2014) (" 'A provisional diagnosis is rendered "when there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis.' " On the other hand, a " 'rule out' diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out.") (quoting Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (2013) ("DSM-V") at 23) (citing *U.S. v. Grape,* 549 F.3d 591, 593–94 n. 2 (3rd Cir. 2008) (noting a "rule out" diagnosis indicates "there is reason to suspect the presence of a psychotic disorder, but the doctor would not be comfortable giving such a diagnosis at that time")); *See also Schmidt v. Berryhill,* 2017 WL 2672072, at *4 (D. Or. June 20, 2017) (distinguishing between a provisional diagnosis and a rule out diagnosis).

---

https://sites.google.com/a/iconopsych.com/psychlopedia-com/rule-out (last visited October 5, 2018) (Provisional defined as "when there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis.").

[6] [footnote original] There is no "rule out" modifier in DSM nomenclature. A diagnosis is a declarative statement, whereas using a "rule out" modifier changes a declarative statement into an intended future action. https://sites.google.com/a/iconopsych.com/psychlopedia-com/rule-out (last visited October 5, 2018).

In this case, the ALJ assigned great weight to the opinion of Dr. Thompson, but failed to discuss Dr. Thompson's provisional diagnosis of a neurocognitive disorder and made explicit conclusions contrary to the opinion of Dr. Thompson. AR 88, 94. Moreover, after reviewing the record, Dr. Thompson concluded Plaintiff's neurocognitive disorder limits her memory, concentration, and ability to adapt to routine changes in a typical work setting. AR. 555-57. As such, there is evidence Plaintiff's neurocognitive disorder causes functional limitations which impact her ability to perform basic work activities. *See Smolen*, 80 F.3d at 1290. An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571. Dr. Thompson's provisional neurocognitive disorder diagnosis, along with the corresponding functional limitations in memory, concentration and adaption, was significant probative evidence the ALJ erred in failing to discuss. *See* AR 88, 94; SSR 96-8p (the RFC assessment must address non-exertional capacities such as mental abilities (e.g. understanding and remembering instructions and dealing with changes in a routine work setting)).

Because the Commissioner "may not reject 'significant probative evidence' without explanation," and the ALJ assigned great weight to Dr. Thompson's opinion, but gave no reason for discounting the provisional neurocognitive disorder diagnosis and Plaintiff's functional limitations other than the incorrect statement it was a rule out diagnosis, the Court concludes the ALJ erred. *See Flores*, 49 F.3d at 570-71; *Provencio v. Astrue*, 2012 WL 2344072, *9 (D. Ariz., June 20, 2012) (finding the ALJ erred by giving "great weight" to a consultative examiner's opinion, yet ignoring parts of the opinion); *Schmidt v. Berryhill,* 2017 WL 2672072, at *4 (D. Or.

June 20, 2017) (finding because the ALJ fully credited the physician's opinion and gave no reason to reject a provisional diagnosis of somatic symptom disorder, the ALJ's failure to consider it a medically determinable mental impairment was error).

Defendant does not address Plaintiff's argument the ALJ failed to include or mischaracterized Dr. Thompson's neurocognitive disorder diagnosis at Step Two and instead, argues in a conclusory fashion the ALJ evaluated Dr. Thompson's opinion in light of the entire medical record to arrive at a set of limitations accommodating Dr. Thompson's assessment. Dkt. 13 at 2-3 (citing AR 91-96). Defendant also contends in order to invalidate an ALJ's evaluation of ambiguous medical evidence, it is Plaintiff's burden to show error. Dkt. 13 at 3 (citing *McLeod v. Astrue,* 649 F.3d 881, 887 (9th Cir. 2017)).

However, to the extent Dr. Thompson's diagnosis was ambiguous, the questions raised by Dr. Thompson's evaluation concerning the nature and existence of Plaintiff's neurocognitive disorder triggered the ALJ's duty to fully and fairly develop the record in this case. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted) (An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered."). The ALJ's duty is triggered where the record contains "[a]mbiguous evidence" or the ALJ finds the record to be inadequate to allow for proper evaluation thereof. *Id* (citations omitted); *see also Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001).

Next, the Court must consider whether any error is harmless. An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004)). In the context of a Step Two determination, any error by the ALJ in failing to find a specific severe

impairment is harmless if the claimant nonetheless prevails at Step Two, and all impairments—regardless of severity—are actually considered in all subsequent steps. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). *See also Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007), *Garcia v. Comm'r of Soc. Sec. Admin.,* 587 Fed.Appx. 367, 370 (9th Cir. 2014). But, if the exclusion of a severe impairment leads to a RFC assessment which is "incomplete, flawed, and not supported by substantial evidence in the record," or otherwise prejudices the claimant, the error is harmful. *See Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012). *See also Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005).

The ALJ assigned great weight to Dr. Thompson's opinion, but gave no specific and legitimate reason for discounting the provisional neurocognitive disorder diagnosis. AR 87-88, 94. As such, the Court cannot conclude the ALJ properly considered Plaintiff's neurocognitive disorder, or the limitations caused by this impairment, when determining the RFC. The Court notes the ALJ found Plaintiff had severe mental impairments at Step Two (e.g. PTSD and major depressive disorder) and included some mental limitations in the RFC (e.g. Plaintiff can understand, remember, and carry out simple instructions, as well as moderately complex instructions consistent with both unskilled and semi-skilled work. She can perform work which requires math no more complex than addition and subtraction). AR 87, 91. However, simply because the ALJ found Plaintiff's PTSD and major depressive disorder were severe impairments does not show the ALJ properly considered Plaintiff's neurocognitive disorder or the entirety of Dr. Thompson's opinion. For example, Dr. Thompson found Plaintiff's ability to adapt to changes in a routine work setting was impacted by her poor memory functions, but the RFC contains no adaption limitations and the ALJ's decision reflects no evaluation of this limitation. AR 88, 94, 553-54, 556-57. *See Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012) (finding

because "the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnoses as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record"); *Smolen*, 80 F.3d at 1290 ("having found [the plaintiff] to suffer from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments . . . affected her residual functional capacity to perform work").

Therefore, this matter should be reversed and remanded for further consideration of Dr. Thompson's opinion and further consideration of Plaintiff's neurocognitive disorder diagnosis, including further development of the record as necessary.

**II.     Whether the ALJ erred by failing to properly evaluate the remaining medical evidence, Plaintiff's subjective symptom testimony, and Plaintiff's RFC and the findings at Steps Four and Five.**

Plaintiff argues the ALJ erred in evaluating the opinion of Peggy Duquette, MHP, LMHC, the other medical evidence supports Plaintiff's testimony about her symptoms and limitations, and the ALJ erred in her evaluation of the opinions of non-examining physicians and psychologists. Dkt. 12 at 2-10. Plaintiff also contends the ALJ erred in assessing Plaintiff's subjective symptom testimony, Plaintiff's RFC, and the findings at Steps Four and Five of the sequential evaluation process. Dkt. 12.

The ALJ's error at Step Two requires remand to the Commissioner for further consideration of Plaintiff's severe impairments. As the ALJ's error at Step Two impacts all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process. Thus, it is unnecessary to address the other issues raised in Plaintiff's appeal.

The ALJ must also reconsider the alleged onset date of disability based on Plaintiff's potential SGA in 2014. *See* Dkt. 12 at 1 at fn. 1 (Plaintiff acknowledges the alleged onset date of July 7, 2013 is incorrect because the record reflects Plaintiff's earnings did not fall below SGA levels until January 2014); Dkt. 13 at 7-8 (Defendant argues Plaintiff's concession was proper, but Plaintiff may have worked at SGA levels beyond January 2014); *See also* AR 84 (the ALJ's decision indicates a disability onset date of July 7, 2013), 109-110 (Plaintiff worked as a home health care attendant for 47 hours a month in 2014), 297 (Plaintiff's earnings records from 1995 to 2014).

**III. Whether this matter should be remanded for an award of benefits or further administrative proceedings.**

Lastly, Plaintiff asserts as a result of the ALJ's errors, an award of benefits is warranted. Dkt. 12 at 17-18.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error at Step Two and her consideration of Dr. Thompson's opinion. The ALJ must re-evaluate the evidence and finds issues remain which must be resolved concerning Plaintiff's functional capabilities. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 11th day of October, 2018.

David W. Christel
United States Magistrate Judge